RENDERED: FEBRUARY 28, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0432-MR

SAMMY ROSE                                                    APPELLANT

|     |     |
|-----|-----|
| v.  | APPEAL FROM FAYETTE CIRCUIT COURT<br>HONORABLE DIANE MINNIFIELD, JUDGE<br>ACTION NO. 23-CI-02873 |

LEXINGTON-FAYETTE URBAN COUNTY
GOVERNMENT; DAVID SHELTON, IN HIS
INDIVIDUAL AND OFFICIAL CAPACITY;
AND WANDA KEAN, IN HER INDIVIDUAL
AND OFFICIAL CAPACITY                                         APPELLEES

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: COMBS, A. JONES, AND McNEILL, JUDGES.

JONES, A., JUDGE: Sammy Rose appeals the Fayette Circuit Court's dismissal

of various civil claims he asserted against the above-captioned appellees

(collectively, "LFUCG"). For the reasons expressed below, we reverse and remand.

## I. BACKGROUND

On September 6, 2023, a complaint was electronically filed[1] in Fayette Circuit Court on behalf of appellant Rose, initiating[2] the underlying action. There, Rose asserted claims of workplace disability discrimination and retaliatory discharge against LFUCG. The substance of his claims is unimportant. The salient issues presented in this appeal involve the operative effect of CR[3] 11 and how Rose's complaint was "signed" and thus certified for purposes of that rule. In its first two sentences, the rule mandates:

> Every pleading, motion and other paper of a party
> represented by an attorney shall be signed by at least one
> attorney of record in his individual name, whose address
> shall be stated. A party who is not represented by an
> attorney shall sign his pleading, motion, or other paper
> and state his address.

---

[1] "All documents that are eFiled in the Commonwealth contain a 'stamp line,' for lack of a better term, indicating the case number, the date the document was filed, the name of the circuit court clerk, and the county the circuit clerk serves." *Manning v. Commonwealth*, 701 S.W.3d 478, 499 (Ky. 2024). Rose's complaint, while it does not explicitly recite that it was eFiled, contains such a stamp line.

[2] The initiating complaint of September 6, 2023, was styled as an "amended complaint." To be clear, the initiating complaint of September 6, 2023, is the only complaint that has ever been filed on behalf of Rose in this action.

[3] Kentucky Rule of Civil Procedure.

Here, Rose's "attorney" purportedly "signed" and thus certified the complaint for CR 11 purposes by either typing "Samuel G. Hayward" in Times New Roman font onto it, or by photocopying "Samuel G. Hayward," written in Times New Roman font, onto the complaint from another document. On the following page, there was also a scanned version of a "verification" from Rose, consisting of Rose's purported signature, a notary's signature, and a recitation that the notary's commission "Expires: 12/30/21" and that Rose had subscribed and sworn the complaint "this 2nd day of JUNE 2020[,]" *i.e.*, three years prior to the complaint's filing date.

LFUCG has never answered Rose's complaint. Rather, LFUCG initially and successfully moved to quash service of process. Then, after it was successfully served, it responded to Rose's complaint on January 23, 2024, with a motion to dismiss predicated upon interplay between the five-year statute of limitations that undisputedly applied to each of Rose's claims, and what LFUCG perceived as Rose's violation of CR 11 and the language of that rule set forth above. What LFUCG offered in support of its motion to dismiss may be summarized as follows:

- Prior to February 28, 2022, an attorney named "Samuel G. Hayward" had represented Rose, filed a complaint in Fayette Circuit Court on Rose's behalf under a different case number (No. 20-CI-01155), and had "signed"

and thus purported to certify the complaint in that prior matter for CR 11 purposes by typing "Samuel G. Hayward" in Times New Roman font. That case, No. 20-CI-01155, was dismissed without prejudice on February 21, 2023, for lack of prosecution. A substantially similar complaint – still bearing the typed, Times New Roman font "signature" of "Samuel G. Hayward" – was then filed on September 6, 2023, initiating the instant litigation (No. 23-CI-02873).

- The attorney who had represented Rose in No. 20-CI-01155 prior to February 28, 2022, and had referred to himself as "Samuel G. Hayward" in the complaint filed in that previously dismissed case, was Samuel G. Hayward, *Senior*. He had a son, also an attorney in his firm, who was *also* named Samuel G. Hayward. But, to distinguish himself from Samuel G. Hayward, Senior, his son often went by the nickname, "Chip," and would often utilize a child suffix to sign legal pleadings as "Samuel G. Hayward, Jr."

- Samuel G. Hayward, Senior, died on February 28, 2022. Afterward, Samuel G. Hayward, Jr., assumed responsibility for Samuel G. Hayward, Senior's, caseload at the firm.

- There is no dispute that Samuel G. Hayward, Jr., was an attorney representing Rose when the complaint – which was substantially similar to

-4-

the complaint filed in No. 20-CI-01155, and which still bore the Times New Roman font "signature" of "Samuel G. Hayward" – was filed on September 6, 2023, and initiated the instant action, No. 23-CI-02873. LFUCG also tendered affidavits from two attorneys, Johannsen and LaCourse, who averred it was their belief that Samuel G. Hayward, Jr., was the attorney who had filed Rose's complaint in the instant action, No. 23-CI-02873.[4]

- But, "Jr." was omitted from the attorney "signature" of "Samuel G. Hayward" that had been typed in Times New Roman font and added to the September 6, 2023 complaint for CR 11 purposes. And, in two motions Samuel G. Hayward, Jr., had electronically filed on behalf of Rose (on October 31, 2022, in No. 20-CI-01155, and on October 13, 2023 in No. 23-CI-02873, respectively), Samuel G. Hayward, Jr., had utilized the signature: "/s/ Samuel G. Hayward, Jr."

- As such, LFUCG assumed that although Samuel G. Hayward, Jr., had been representing Rose in No. 23-CI-02873 and had filed the initiating complaint for him on September 6, 2023, Samuel G. Hayward, Jr., had actually intended for all concerned to *not* regard the typed "signature" of "Samuel G. Hayward" as *his* signature for CR 11 purposes. Rather, LFUCG assumed that Samuel G. Hayward, Jr., for reasons known only to himself, had

---

[4] *See* trial record ("TR") 97 (affidavit of August T. Johannsen); TR 101 (affidavit of Michael J. LaCourse).

intended for all concerned to regard that "signature" as the "signature" of his deceased father, Samuel G. Hayward, Senior. LFUCG accordingly concluded, "[t]he person who signed the Complaint died 556 days before its filing."[5]

- LFUCG's assumption (*i.e.*, that the typewritten "Samuel G. Hayward" "signature" must have been intended as the signature of the deceased Samuel G. Hayward, Senior, because it had omitted "Jr.") then led LFUCG to make a chain of legal conclusions that the circuit court would ultimately find persuasive and dispositive. In sum, LFUCG observed that CR 11 requires pleadings from parties represented by an attorney to be "signed by at least one attorney of record in his individual name[.]" It concluded that Rose's complaint – which it believed had been "signed" on behalf of a *dead* attorney – had therefore violated CR 11 because, as it observed, "the signature of a deceased attorney who died well before the filing of the Complaint and who was never counsel of record in this action is invalid and wholly fails to meet basic Rule 11 requirements."[6]

- LFUCG also asserted Rose had been sufficiently on notice of this "omission" and had failed to "promptly" rectify it for purposes of CR 11.

---

[5] *See* "Defendants' reply in support of their motion to strike the complaint and dismiss the action[.]" Record at 125.

[6] *Id*. at 126 (emphasis omitted).

To that effect, it tendered affidavits from attorneys Johannsen and LaCourse who swore that they had notified Rose's subsequent counsel,[7] Hon. Chris Miller, on three occasions during November and December 2023, that in their view Samuel G. Hayward, Jr., must have intended (by omitting "Jr." from the typed "signature" of "Samuel G. Hayward" on the September 6, 2023 complaint) to signal to all concerned that they should not regard the typed "signature" of "Samuel G. Hayward" as Samuel G. Hayward, Jr.'s "signature," but rather as the "signature" of his deceased father, Samuel G. Hayward, Senior.[8]

---

[7] On October 22, 2023, the circuit court granted Samuel G. Hayward, Jr.'s, motion to withdraw from representing Rose.

[8] *See* TR 97-98, affidavit of August T. Johannsen, stating in relevant part:

> 3. . . . I am somewhat familiar with some of the procedural facts in this matter, namely that Plaintiff's former counsel filed an Amended Complaint with his deceased father's signature on it from a prior case that had been dismissed for lack of prosecution as the operative complaint in this case, and that Plaintiff's new counsel is Christopher Miller.
>
> 4. On or about November 2, 2023, I spoke with Christopher Miller about an unrelated case. In that telephone conference, Mr. Miller mentioned that he was considering whether to accept Plaintiff Sammy Rose as a new client. I told Mr. Miller that I was not counsel on that matter but mentioned my understanding that Plaintiff's former counsel had filed an Amended Complaint with his deceased father's signature on it from a prior case that had been dismissed for lack of prosecution as the operative complaint in this instant matter.
>
> 5. Mr. Miller and I discussed that topic briefly, including our mutual surprise that an attorney would file a pleading in that manner.

*See also* TR 101, affidavit of Michael J. LaCourse, stating in relevant part:

- Further, LFUCG argued that the "verification" from Rose elsewhere in the September 6, 2023 complaint – which consisted of a scanned version of Rose's purported signature and recited that Rose had subscribed and sworn the complaint "this 2nd day of JUNE 2020" – could not qualify as a substitute "certification" in this case for CR 11 purposes. LFUCG argued this was so because, in its view, a "verification" can never qualify as a CR

---

3. I am counsel of record . . . in this matter for Defendants Lexington-Fayette Urban County Government ("LFUCG"), Wanda Kean, and David Shelton.

4. I . . . also represented Defendants in the prior iteration of this case Plaintiff Sammy Rose had filed against them in the Fayette Circuit Court, Case No. 20-CI-01155.

5. On or about November 9, 2023, I spoke with Christopher Miller by telephone. He introduced himself as Mr. Rose's new counsel, and proceeded to talk to me about the underlying facts of this matter[.] . . . In that conversation, I specifically mentioned that Mr. Rose's former counsel, Chip Hayward, had filed the Amended Complaint from the prior case as the operative Complaint in this case and that it included his deceased father, Samuel Hayward's, signature on it.

6. On December 12, 2023, I spoke with Mr. Miller again about this case. In that call, Mr. Miller discussed his evaluation of Plaintiff's claims, his views as to Defendants' purported weaknesses, and other related matters. In that conversation, we also discussed what discovery there would be to conduct in this case. I made clear that discovery had not begun because this matter is distinct from the prior case. In that discussion, I remarked that the Amended Complaint from the prior case was filed as the operative Complaint in this case, again indicating there were procedural defects with Plaintiff's Complaint in this matter.

7. From my conversations with Mr. Miller, it is my understanding that he understood that Plaintiff, through attorney Chip Hayward, filed the Amended Complaint from the prior case as the operative Complaint in this one and that the Amended Complaint contained the signature of Plaintiff's former counsel's deceased father, not Chip Hayward's own signature.

11 "certification," and because CR 11 prohibits parties who are represented by an attorney from certifying their own pleadings.

- Accordingly, LFUCG argued the circuit court was required to sanction Rose for this claimed violation of CR 11 by striking Rose's September 6, 2023 complaint; and that because this was mandated, the circuit court was also required to dismiss Rose's case with prejudice based upon the applicable statute of limitations. Striking Rose's complaint would have the effect of ending his lawsuit,[9] and Rose would be prohibited from re-filing it because more than five years had already elapsed since the claims Rose had asserted in that complaint had accrued.

In his written response and during oral arguments before the circuit court, Rose argued: (1) no evidence of Samuel G. Hayward, Jr.'s subjective intentions had ever been adduced, and that for CR 11 purposes, the omission of "Jr." from the "signature" of "Samuel G. Hayward" was not proof that the "signature" of "Samuel G. Hayward" was *not* the intended "signature" of Samuel G. Hayward, Jr.; (2) his counsel, Hon. Christopher Miller, "swore as an officer of the court" that he recalled no conversations with attorneys Johannsen and LaCourse to the effect that Rose's complaint in No. 23-CI-02873 violated CR 11

---

[9] *See Brozowski v. Johnson*, 179 S.W.3d 261, 264-65 (Ky. App. 2005).

because it had been certified by or on behalf of a dead attorney when filed;[10] (3) a party's verified signature could qualify as a certification for CR 11 purposes; and (4) *if* the signature that certified Rose's complaint in 23-CI-02873 did not legally qualify as a signature for CR 11 purposes, the defect could be easily cured by having the complaint signed by his current counsel, and that his current counsel was ready, willing, and able to do so.[11]  During oral arguments, Rose's counsel also stated he was uncertain *any* attorney had signed and thus certified Rose's complaint:

> COURT:  It was a verified petition, complaint.
>
> COUNSEL:  Right.  Signed by the plaintiff.  And, and one of the Haywards.  They say it's the elder.  I don't know who signed it.  And I, I'm not even sure anybody signed it because if you look at the signature block, there's not a [(*motions with his hand*)] signature, really.  There's just the name.  A typed name.

March 15, 2024 hearing at 2:55:54 – 2:56:10.

---

[10] Taking issue with Miller's swearing "as an officer of the court," LFUCG reiterated that it did "not in any meaningful way refute that [Rose's] Complaint was signed by Sam Hayward, Sr., who had been deceased for some time at its filing, and not by his then-counsel of record, Chip Hayward."  *See* "Defendants' reply in support of their motion to strike the complaint and dismiss the action[.]"  Record at 126.

[11] Specifically, during oral arguments, Rose's counsel argued to the circuit court that if the "signature" of "Samuel G. Hayward" or Rose's verified signature were insufficient for CR 11 purposes, "You could simply just let me sign it, and if you want me to put my own signature on the complaint, I will.  I entered an appearance, I thought that was enough.  I didn't know I had to go back and re-sign the complaint.  And if I did, judge, I would have.  If they really brought this up, I would have.  That's the point of this.  I don't remember them saying it was the same complaint that was filed before.  The idea that the dead dad signed it or somehow that's invalid never came up in any conversation."  March 15, 2024 hearing at 2:59:04 – 2:59:31.

-10-

As indicated, the circuit court found LFUCG's argument set forth above persuasive and dispositive. During a March 15, 2024 hearing on LFUCG's motion, it rendered oral findings adopting the substance of LFUCG's argument. It added during that hearing, "I'm not saying that the plaintiff's verified signature is not effective,"[12] only that a verified signature of a party represented by counsel cannot substitute as a CR 11 certification in the event his counsel's signature is deemed invalid. And, rejecting Rose's argument that his counsel could cure the alleged CR 11 defect by signing the complaint right then and there, the circuit court explained:

> COURT: There's a statute of limitations. That's the issue. That's the issue, there is a statute of limitation that, that is there for a purpose. You know? I mean, you don't just get to not bring actions and move them forward appropriately when we have statutes of limitations. And so, I mean, we would definitely be in a different boat if we were just able to refix it and file it and not be outside of the statute of limitations.
>
> COUNSEL: Well, your honor, this complaint was filed within the statute of limitations.
>
> COURT: But this complaint, if it's stricken because it doesn't meet the requirements of a complaint, a verified complaint, you know, then it doesn't exist.

*See* March 15, 2024 hearing at 3:02:24 – 3:03:06.

---

[12] *See* March 15, 2024 hearing at 3:03:20 – 3:03:23.

-11-

On March 21, 2024, the circuit court then entered a written order that stated: "For the reasons set forth in Defendants' Motion and discussed at the March 15, 2024, hearing on this Motion, Defendants' Motion to Strike and Dismiss this Action is GRANTED."[13]  This appeal followed.

## II. STANDARD OF REVIEW

> In Kentucky, trial courts are not required to make findings when ruling on motions, CR 52.01; but in certain circumstances, especially when granting relief, it is incumbent upon the trial court to make findings on matters raised by motion.  Considering the punitive nature of sanctions and the impact sanctions may have on a party or an attorney's career and personal well-being, a trial court should not impose sanctions without a hearing and without rendering findings of fact. While some courts apply an across-the-board abuse of discretion standard of review to all Rule 11 rulings, we think where sanctions are imposed our role requires a multi-standard approach, that is, a clearly erroneous standard to the trial court's findings in support of sanctions, a *de novo* review of the legal conclusion that a violation occurred, and an abuse of discretion standard on the type and/or amount of sanctions imposed.

*Clark Equip. Co., Inc. v. Bowman*, 762 S.W.2d 417, 420-21 (Ky. App. 1988) (internal quotation marks, footnotes, and citations omitted).  Under the CR 52.01 standard, we are required give a great deal of deference to the circuit court's

---

[13] The reasons underpinning LFUCG's motion to dismiss, along with the circuit court's findings and conclusions agreeing with LFUCG's reasons, were extensively discussed on the record during the circuit court's March 15, 2024 hearing.  The circuit court's subsequent written order of March 21, 2024, while sparse, is adequate for purposes of our CR 52.01 standard of review as it specifically referenced and incorporated the circuit court's clear oral findings and conclusions from the relatively brief March 15, 2024 hearing.  *See, e.g.*, *Smith v. McCoy*, 635 S.W.3d 811 (Ky. 2021).  Moreover, no party moved for additional findings.  *See* CR 52.02; CR 52.04.

findings "unless the record is devoid of substantial evidence to support them." *Cabinet for Health and Family Services v. T.N.H.*, 302 S.W.3d 658, 663 (Ky. 2010).

### III. ANALYSIS

The reasons espoused by LFUCG and adopted by the circuit court either did not support that the "signature" that certified Rose's complaint failed to qualify as a signature for purposes of CR 11 or were colorable enough to be the subject of at least a good faith dispute. Specifically, the omission of "Jr." from "Samuel G. Hayward," standing alone, is not proof that Samuel G. Hayward, Jr. – by either typing or copying "Samuel G. Hayward" onto Rose's September 6, 2023 complaint – subjectively intended for all concerned to regard that "signature" as the "signature" of his deceased father, Samuel G. Hayward, Senior, rather than his own "signature." The suffix "Jr." is not part of a person's name at all and is "merely a matter of description and temporary designation that may exist one day and cease the next." *Adkins v. Adkins*, 242 S.W.2d 614, 615 (Ky. 1951). It could be said with an equal measure of speculation that Samuel G. Hayward, Jr., subjectively intended in that instance for "Samuel G. Hayward" to be regarded as his *own* signature. *See id*. at 616.

It is also telling that what LFUCG offered in support of its contention (*i.e.*, that Samuel G. Hayward, Jr., intended to execute the September 6, 2023

-13-

complaint on behalf of the deceased Samuel G. Hayward, Senior, rather than on his own behalf) did not consist of any testimony or averments from Samuel G. Hayward, Jr., regarding his mental processes at that time. Instead, LFUCG relied exclusively upon its own speculation and the speculation set forth in the affidavits of attorneys Johannsen and LaCourse[14] about Samuel G. Hayward, Jr.'s mental processes. What LFUCG adduced regarding Samuel G. Hayward, Jr.'s intentions did not qualify as evidence in that regard, substantial or otherwise. *See O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (explaining speculation is not evidence); *see also* CR 56.05 (requiring affidavits "shall be made on personal knowledge").

Lastly, beyond simply quoting CR 11, LFUCG favors this Court with no authority, and we have found none, supporting the broad proposition that a party's verified signature cannot qualify as a substitute "certification" for CR 11 purposes in the event his or her attorney's signature is deemed invalid. To the contrary, CR 11 does not squarely address that eventuality; and our Supreme Court has indicated that a verified signature may indeed qualify as a certification for CR 11 purposes. *Taylor v. Kentucky Unemployment Ins. Comm'n*, 382 S.W.3d 826, 834 (Ky. 2012) ("While the signature upon verification may suffice as a certification, the reverse is not true."). LFUCG's argument elevates form over substance. We are aware of no reason why a scanned version of a plaintiff's

---

[14] In their respective affidavits, neither Johannsen nor LaCourse averred any personal knowledge of Samuel G. Hayward, Jr.'s intentions when he filed Rose's September 6, 2023 complaint.

verified signature on an eFiled complaint, in the event his or her attorney's certification is deemed invalid, could not be regarded as substantial compliance with CR 11 – at least substantial enough to deem a circuit court's decision to strike the complaint an abuse of discretion. *See* CR 5.02(2) (explaining that for purposes of our civil rules, "The signature of an attorney or party on a document served by electronic mail may be represented by . . . a scanned version of an original signature.").

That is not to say, however, that *no* evidence of record or rule of law supported that at least one of the signatures on Rose's complaint was invalid for purposes of CR 11. To the contrary, the typewritten "signature" of "Samuel G. Hayward" violated CR 11 for a reason we believe should have been apparent. During the March 15, 2024 hearing, Rose's counsel questioned whether a typewritten signature qualified as a signature for CR 11 purposes, but his question went unanswered. However, Kentucky courts have turned to federal analysis of FRCP[15] 11 for guidance on CR 11 issues. *See generally Bowman*, 762 S.W.2d 417. Like CR 11, FRCP 11(a)'s first sentence similarly provides: "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name -- or by a party personally if the party is unrepresented." And, interpreting FRCP 11(a), the United States Supreme Court

---

[15] Federal Rule of Civil Procedure.

has explained that an attorney's or *pro se* litigant's *typewritten name* does not

satisfy the signature requirement of FRCP 11(a):

> We do not doubt that the signature requirement can be adjusted to keep pace with technological advances.  A 1996 amendment to Civil Rule 5 provides in this regard:
>
>> "A court may by local rule permit papers to be filed, signed, or verified by electronic means that are consistent with technical standards, if any, that the Judicial Conference of the United States establishes. A paper filed by electronic means in compliance with a local rule constitutes a written paper for the purpose of applying these rules."  Fed. Rule Civ. Proc. 5(e).
>
>> See, *e.g.*, Rule 5.1 (ND Ohio 2000) (permitting "papers filed, signed, or verified by electronic means"). The local rules on electronic filing provide some assurance, as does a handwritten signature, that the submission is authentic. . . .  Without any rule change so ordering, however, we are not disposed to extend the meaning of the word "signed," as that word appears in Civil Rule 11(a), to permit typed names.  As Rule 11(a) is now framed, we read the requirement of a signature to indicate, as a signature requirement commonly does, and as it did in John Hancock's day, a name handwritten (or a mark handplaced).

*Becker v. Montgomery*, 532 U.S. 757, 763-64, 121 S. Ct. 1801, 1806, 149 L. Ed. 2d

983 (2001).

The running assumption of the parties' arguments and the circuit

court's analysis has always been – and continues to be, based on what is set forth

in the parties' appellate briefs – that while a signature by or on behalf of a dead

-16-

attorney cannot certify a complaint for purposes of CR 11, the typed name of an attorney or *pro se* litigant can. But, there is no reason to interpret CR 11 and FRCP 11 differently in this context: No Kentucky civil rule or authority permits a "signature" consisting simply of a typed name to satisfy CR 11. Indeed, no such authority could exist without conflicting with CR 5.02, which recognizes only three types of "signatures" for purposes of our civil rules: (1) a "hand-signed original signature"; (2) "[t]he signature of an attorney or party on a document served by electronic mail . . . represented by '/s/' followed by the typed name of the person signing the document," or, also in the context of an electronically-served document; and (3) "a scanned version of an original signature." *See* CR 5.02(2). The typed "signature" of "Samuel G. Hayward" on Rose's complaint was not preceded by "/s/". Thus, for purposes of CR 11, it was the signature of no one.

In short, Rose had at least a good faith basis for contesting the alleged CR 11 violations posited by LFUCG and ultimately adopted by the circuit court; but the CR 11 violation noted by this Court has never been called to his attention. This is dispositive of why the circuit court erred in dismissing Rose's complaint. To explain, we again turn to CR 11. It provides as follows:

> Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. Except when otherwise specifically

provided by Rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.* If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee. The Court shall postpone ruling on any Rule 11 motions filed in the litigation until after entry of a final judgment.

(Emphasis added.)

The above-italicized language of CR 11 underscores that if a pleading, motion, or other paper is not signed, it is merely voidable, not automatically void; and that notice of an omission is not simply imputed by the obviousness of the omission or by operation of law: Unless "the omission is called to the attention of the pleader or movant[,]" nothing is stricken, and the omission does not otherwise

-18-

render the pleading, motion, or other paper invalid. CR 11 also contemplates that an omission of a *specific* nature, *e.g.*, "the omission," will be "called to the attention" of the pleader or movant, and that the pleader or movant will be given an opportunity to dispute the alleged omission and – if it is indeed an omission – an opportunity to promptly cure it. This goes hand-in-glove with the directive of *Bowman* that CR 11 sanctions should not be imposed "without a hearing and without rendering findings of fact." 762 S.W.2d at 421. If, as here, an opposing party merely provides the pleader or movant notice of a specific kind of "omission" that arguably does not qualify as an omission at all for CR 11 purposes, nothing has been "called to the attention of the pleader or movant" – at least not until the trial court resolves the dispute.

Conversely, if this Court is the only entity to notice that a different kind of omission of a specific nature should have been corrected below, we cannot seize upon that different kind of omission as an alternate basis for affirming the lower court's decision to strike the plaintiff's complaint. Again, CR 11 only authorizes the striking of a complaint for omissions "called to the attention of the pleader." Affirming the striking of a complaint on a basis that was never raised below and thus never "called to the attention of the pleader" at the trial level would violate both the spirit and plain language of the rule. It would also overstep our appellate prerogative: While "our caselaw holds that an appellate court may affirm

-19-

a lower court on any basis supported by the record . . . the cited rule presumes the alternative basis of affirmance was properly raised before the trial court." *Gasaway v. Commonwealth*, 671 S.W.3d 298, 320 (Ky. 2023) (citations omitted); *cf. Kentucky Farm Bureau Mut. Ins. Co. v. Shelter Mut. Ins. Co.*, 326 S.W.3d 803, 805 n.3 (Ky. 2010) (alternatively affirming based upon a purely legal issue which, although not raised before the trial court, was "presented squarely to the Court of Appeals" by the parties).

As discussed above, the reasons espoused by LFUCG either did not support that the "signature" that certified Rose's complaint failed to satisfy CR 11 or were colorable enough to be the subject of at least a good faith dispute. Thus, it cannot be said that any "omission" was "called to the attention" of Rose – at least not any time prior to when the circuit court resolved LFUCG's claims at the March 15, 2024 hearing. And, while Rose's counsel arguably called to his *own* attention during the March 15, 2024 hearing that a typewritten "signature" might not qualify as any kind of signature for CR 11 purposes, he did so within minutes of asking the circuit court for an opportunity to cure any signature defect by simply signing his own name to Rose's complaint. CR 11 explicitly conditions the authority of a trial court to strike an unsigned pleading upon the pleader's failure to "promptly" correct the omission after the omission is called to his or her attention. By refusing

-20-

to grant Rose's request to promptly cure that omission, and by instead simply striking his complaint, the circuit court erred.

At this juncture, it is important to remember that the mere act of signing a pleading does not, as the circuit court seems to have understood, require a formal amendment or the filing of another complaint. Once more, the rule provides in relevant part: "If a pleading, motion or other paper is not signed, it shall be stricken **unless** it is *signed* promptly after the omission is called to the attention of the pleader or movant." (Emphasis added.) The rule contemplates that the existing pleading can simply be signed; there is no need to refile or formally amend it. *See Montgomery*, 532 U.S. at 764, 121 S. Ct. at 1806 (internal quotation marks and citation omitted) (explaining, in the context of FRCP 11(a), that "Correction can be made . . . by signing the paper on file or by submitting a duplicate that contains the signature.").

## IV. CONCLUSION

The circuit court abused its discretion by striking Rose's complaint and consequently dismissing Rose's action. We accordingly REVERSE and REMAND for further proceedings not inconsistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Christopher D. Miller
Lexington, Kentucky

BRIEF FOR APPELLEES:

LaToi D. Mayo
Michael J. LaCourse
Cody E. King
Lexington, Kentucky